UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

JOSHUA JAMES KOONCE,           )
                               )
            Plaintiff,         )
                               )
      v.                       )          Case No. 1:22 CV 7 MTS
                               )
JOSEPH Z. SATTERFIELD, et al., )
                               )
            Defendants.        )

## MEMORANDUM AND ORDER

Self-represented Plaintiff Joshua James Koonce brings this action under 42 U.S.C. § 1983 for alleged violations of his civil rights.  The matter is now before the Court upon the motion of Plaintiff for leave to proceed *in forma pauperis*, or without prepayment of the required filing fees and costs.  Doc. [2].  Having reviewed the motion and the financial information submitted in support, the Court will grant the motion and assess an initial partial filing fee of $1.00.  *See* 28 U.S.C. § 1915(b)(1).  Furthermore, after reviewing the complaint and supplement, the Court will dismiss this case for failure to state a claim upon which relief may be granted.  *See* 28 U.S.C. § 1915(e)(2)(B).  As such, Plaintiff's motion for counsel will be denied as moot.

### Initial Partial Filing Fee

Pursuant to 28 U.S.C. § 1915(b)(1), a prisoner bringing a civil action *in forma pauperis* is required to pay the full amount of the filing fee.  If the prisoner has insufficient funds in his or her prison account to pay the entire fee, the Court must assess and, when funds exist, collect an initial partial filing fee of 20 percent of the greater of (1) the average monthly deposits in the prisoner's account, or (2) the average monthly balance in the prisoner's account for the prior six-month period.  After payment of the initial partial filing fee, the prisoner is required to make monthly

payments of 20 percent of the preceding month's income credited to the prisoner's account.  28 U.S.C. § 1915(b)(2).  The agency having custody of the prisoner will forward these monthly payments to the Clerk of Court each time the amount in the prisoner's account exceeds $10, until the filing fee is fully paid.  *Id.*

When Plaintiff initiated this action, he was detained at Stoddard County Jail.  Doc. [1] at 2.  Plaintiff submitted a form motion to proceed in the district court without prepaying fees or costs.  Doc. [2].  Although the form states that an inmate must submit a certified prison account statement, Plaintiff has not done so.  In his affidavit, however, he states that he has no job, no income, no assets, and no money in his prison account.  Based on the financial information Plaintiff has submitted, the Court will assess an initial partial filing fee of $1.00.  *See Henderson v. Norris*, 129 F.3d 481, 484 (8th Cir. 1997) (when a prisoner is unable to provide the Court with a certified copy of his prison account statement, the Court should assess an amount "that is reasonable, based on whatever information the court has about the prisoner's finances.").  If Plaintiff is unable to pay the initial partial filing fee, he must submit a copy of his prison account statement in support of his claim.

## Legal Standard on Initial Review

Under 28 U.S.C. § 1915(e)(2), the Court may dismiss a complaint filed *in forma pauperis* if the action is frivolous or malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief against a defendant who is immune from such relief.  When reviewing a complaint filed by a self-represented person under 28 U.S.C. § 1915, the Court accepts the well-pleaded facts as true, *White v. Clark*, 750 F.2d 721, 722 (8th Cir. 1984), and it liberally construes the complaint.  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Haines v. Kerner*, 404 U.S. 519, 520 (1972).  A "liberal construction" means that if the essence of an allegation is discernible, the district

court should construe the plaintiff's complaint in a way that permits the claim to be considered within the proper legal framework. *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015). However, even self-represented plaintiffs are required to allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980); *see also Stone v. Harry*, 364 F.3d 912, 914-15 (8th Cir. 2004) (refusing to supply additional facts or to construct a legal theory for the self-represented plaintiff).

To state a claim for relief, a complaint must plead more than "legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action [that are] supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A plaintiff must demonstrate a plausible claim for relief, which is more than a "mere possibility of misconduct." *Id.* at 679. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. *Id.* at 679.

### The Complaint (Doc. [1])

Plaintiff initiated this civil action under 42 U.S.C. § 1983 as a state-court prisoner at Stoddard County Jail awaiting sentencing. Doc. [1] at 2. However, he has since notified the Court that he has been sentenced and he is now incarcerated at the Eastern Reception, Diagnostic and Correctional Center (ERDCC) in Bonne Terre, Missouri. Doc. [4] at 1. Plaintiff alleges violations of his civil rights by four defendants associated with Stoddard County: (1) Joseph Z. Satterfield (judge); (2) Russell David Oliver (prosecuting attorney); (3) Carl Hefner (sheriff); and (4) Chris Cross (jail administrator). Doc. [1] at 2-4. Plaintiff brings his claims against these defendants in both their individual and official capacities. *Id.*

- 3 -

As best the Court can decipher, Plaintiff's complaint can be divided into two main claims which stem from alleged violations from approximately July 2018 to December 2021. *Id.* at 5-9. First, Plaintiff asserts civil rights violations based on his state-court prosecution, including unlawful detention and denial of access to the courts. Second, Plaintiff complains about his conditions of confinement at Stoddard County Jail. He describes his housing conditions, alleges a denial of "psych treatment" and medications in violation of the prohibition on cruel and unusual punishment, and asserts that his restrictive confinement has denied him access to the courts.

As to the state prosecution against him, Plaintiff claims that he has been unlawfully detained. He argues that his $500,000 cash only bond is excessive and violative of his rights to due process and a fair trial under Missouri Court Rules, the Missouri Constitution, and "bond laws." Furthermore, he asserts that he was denied a bond reduction hearing despite multiple requests. *Id.* at 6, 12. According to Plaintiff, he was held for 56 days without a court appearance or an attorney "thus, with no access to the courts." *Id.* at 6. He maintains that his guilty plea was involuntary due to the excessive bail and his attorney telling him that if they lost at trial, he would be sentenced to two consecutive life sentences. *Id.* at 6-7. He also argues that his plea is invalid due to ineffective assistance of counsel. *Id.* at 7. As for the evidence against him, Plaintiff asserts that he was prejudiced by withheld DNA evidence and "not allowing [him] to test a hair." *Id.* Finally, Plaintiff claims he was denied the right to interview a lab tech, as required by Missouri statute. *Id.* at 8.

As to the conditions of confinement at Stoddard County Jail, Plaintiff alleges that for his first week of detention, he was held in a padded cell in isolation with a "Chinese toilet" – described as a hole in the floor. *Id.* at 6. He was also states on "sandwich restriction," consisting of four sandwiches a day. *Id.* Following his first week, Plaintiff was held for two months in a "day-room"

with up to thirteen other inmates, requiring some inmates to sleep on a mattress on the floor. *Id.* at 6.

As for medical treatment, Plaintiff alleges that he immediately asked for a "psych eval" upon beginning his confinement at Stoddard County Jail. He asserts that the conditions of overcrowding at the Jail worsened his medical problems of "paranoid schizophrenia, bipolar disorder, generalized anxiety disorder, chronic depression, insomnia, and social anxiety." *Id.* at 6. He describes his denial of medical care as follows:

> I was denied a psych for 38 months which is also unlawful; is cruel and unusual punishment; exacerbated my conditions, not only making them worse, but causing the development of further issues, such as Post-Traumatic Stress Disorder, and more to be determined once I really see a psych, and not just a psychiatric nurse practitioner.

*Id.* Plaintiff also alleges that he was denied medications for 38 months, but he does not specify what medications he was denied or who denied them. *Id.* at 8. In the injuries section of the form complaint, Plaintiff states: "given in September 2021, Buspar (anxiety), Respiridol [sic] (Bipolar), Trazodone (sleep). Too little, too late." *Id.* at 9.

The only charge Plaintiff asserts against a specifically named defendant is against the Stoddard County jail administrator Chris Cross. *Id.* at 9. Plaintiff alleges that Cross charged him $200 for a damaged mattress and took away his access to phone calls, visitors, and canteen purchases for a month. According to Plaintiff, these actions constitute "unconstitutional punishment" and "loss of access to courts." *Id.*

As to injuries, Plaintiff asserts that the uncertainty surrounding the DNA evidence issues in his state criminal case made his "psych conditions worse and more prevalent." *Id.* at 7. Plaintiff also claims that he suffered from "loss of liberty; loss time; mental anguish; pain and suffering; worsening of mental condition; shame; embarrassment; loss of respect; loss of peace of mind; legal

issues; physical discomfort; violation of due process of law [and] fair trial" and "right to affordable bond, effective counsel, confrontation." *Id.* at 5.

For relief, Plaintiff seeks money damages of over three million dollars. *Id.* at 11-12.

### Supplement to the Complaint (Doc. [5])

In March 2022, the Court received a supplemental filing from Plaintiff. Doc. [5]. Plaintiff informed the Court that he has been sentenced in his state court case but that he believed the case will be "stayed until the verdict is reversed" due to violations of his due process that invalidate his plea. *Id.* at 1. However, Plaintiff requested that the Court "still rule" on his alleged "3 years of being denied psych meds, despite verified diagnosis." *Id.*

### Plaintiff's State Court Record

Independent review of Plaintiff's criminal case on Missouri Case.net, the State of Missouri's online docketing system,[1] shows that Plaintiff was charged with second degree murder and armed criminal action in Stoddard County Circuit Court in 2018. *See State v. Koonce*, No. 18SD-CR00826-01 (35th Jud. Cir. filed July 11, 2018). Bond was set at $500,000 cash only. Soon after case initiation, defense counsel filed a motion for change of judge and the case was reassigned to Judge "Joe Z. Satterfield." The State of Missouri was represented by prosecuting attorney Russell Oliver at many of the court hearings in the case. Plaintiff was initially represented by an attorney from the public defender's office, but it appears he hired private counsel in February 2020.

In August 2019, defense counsel filed a motion for a bond review hearing in the case. The motion argued that Plaintiff's bond was excessive, in violation of the U.S. and Missouri Constitutions and the Missouri Supreme Court Rules. There is no indication in the record that this

---

[1] The Court takes judicial notice of these public state records. *See Levy v. Ohl*, 477 F.3d 988, 991 (8th Cir. 2007) (explaining that district courts may take judicial notice of public state records); *Stutzka v. McCarville*, 420 F.3d 757, 761 n. 2 (8th Cir. 2005) (stating that courts "may take judicial notice of judicial opinions and public records").

motion was ever called for a hearing or ruled on.  Despite being represented by counsel, Plaintiff filed many *pro se* letters and motions with the Court, including five letters from August to October 2020, alleging that he was being illegally detained and seeking dismissal of the case against him.

The case was eventually set for a jury trial on December 7, 2020; but on request of defense counsel, it was continued until January 2021.  However, throughout 2021, the case was repeatedly continued until Judge Satterfield set it for a November 29, 2021 trial, stating that "[g]iven that Mr. Koonce has been incarcerated since August 2, 2018, this trial will be held as scheduled absent some significant circumstance occurring."  Six days before the jury trial was scheduled to begin, defense counsel filed a motion to continue the trial.  The motion stated that the parties had just learned that a hair found at the crime scene – which was believed to be a pet hair – was in fact a human hair that had not been DNA tested.  The State indicated that it would not test the hair for DNA so the defense requested a continuance to pay for testing to be done at a private laboratory. The Court denied the continuance.

On the day of the scheduled jury trial, November 29, 2021, Plaintiff entered a plea of guilty to the crimes charged.  On February 17, 2022, Plaintiff was sentenced to life imprisonment on the murder charge and fifteen (15) years on the armed criminal action charge, with sentences to run consecutively.

## Discussion

Having carefully reviewed and liberally construed the allegations of Plaintiff's complaint and supplement, the Court finds that Plaintiff fails to state a claim upon which relief may be granted.  As a preliminary matter, Plaintiff's claims against defendants Satterfield, Oliver, and Hefner are subject to dismissal because Plaintiff fails to make any specific allegations of constitutional violations against them.  Regardless, even if Plaintiff had named specific defendants

in relation to his different claims, he fails to allege enough factual allegations to support a valid 42 U.S.C. § 1983 claim.  As to Plaintiff's claims regarding his state court prosecution, judgment in favor of Plaintiff would imply the invalidity of his continued confinement in his state court case; therefore, Plaintiff's § 1983 claims for money damages are barred by *Heck v. Humphrey*, 512 U.S. 477 (1994).  Furthermore, defendants Judge Satterfield and prosecutor Oliver are entitled to immunity.  As to Plaintiff's conditions of confinement claims, Plaintiff's conclusory allegations fail to state a violation of the prohibition on cruel and unusual punishment.  For all of these reasons, this case will be dismissed without prejudice under 28 U.S.C. § 1915(e)(2)(B).

## I.    Personal Liability Required for § 1983 Claims

For the majority of claims and allegations of the complaint, Plaintiff names no defendant as the responsible party.  The only defendant specifically named in connection with an alleged violation is jail administrator Chris Cross who is accused of charging Plaintiff for a damaged mattress and restricting Plaintiff's privileges.  As discussed further below, these alleged facts against Cross are not enough to state a claim for a violation of a constitutional right.  As for the other three defendants – Satterfield, Oliver, and Hefner – Plaintiff states no specific claims or allegations against them.

"Liability under § 1983 requires a causal link to, and direct responsibility for, the deprivation of rights." *Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990); *see also Martin v. Sargent*, 780 F.2d 1334, 1338 (8th Cir. 1985) (to be cognizable under § 1983, a claim must allege that the defendant was personally involved in or directly responsible for the incidents that deprived the plaintiff of his constitutional rights).  Plaintiff names no alleged violations for which Satterfield, Oliver, and Hefner are directly responsible.  As such, the complaint is properly dismissed against these defendants on this basis alone. *See Potter v. Clark*, 497 F.2d 1206, 1207

(7th Cir. 1974) ("Where a complaint alleges no specific act or conduct on the part of the defendant and the complaint is silent as to the defendant except for his name appearing in the caption, the complaint is properly dismissed, even under the liberal construction to be given pro se complaints"); *see also Krych v. Hvass*, 83 F. App'x 854, 855 (8th Cir. 2003) (affirming dismissal of *pro se* complaint against defendants who were merely listed as defendants in the complaint and there were no allegations of constitutional harm against them).

## II.     Claims related to Plaintiff's State Court Criminal Case

To the extent that Plaintiff seeks money damages based on a ruling that his state court conviction is invalid, such a § 1983 claim is not cognizable.  Plaintiff pleaded guilty in his state court case on November 29, 2021.  He filed this case approximately two months later, alleging constitutional violations in relation to his state court confinement and conviction.  *See* Doc. [1] at 18 (complaint signed on January 30, 2022).   "[I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus."  *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994).

Plaintiff has not alleged, nor has the Court found any evidence, that Plaintiff's state court conviction and sentence have been reversed on direct appeal, expunged by executive order, declared invalid, or called in question by a writ of habeas corpus.  Although Plaintiff alleges in his supplemental filing that he believes his state court conviction "will be stayed until the verdict is reversed," there is no evidence of such action in the state court records.  *See* Doc. [5] at 1.  If the

Court here found for Plaintiff on his claims of constitutional violations in relation to his state court case, it could render Plaintiff's criminal conviction or sentence invalid. Therefore, Plaintiff's claims are not cognizable under § 1983 and subject to dismissal for failure to state a claim. *See also Schafer v. Moore*, 46 F.3d 43, 45 (8th Cir. 1995) (affirming district court's failure to state a claim dismissal of a § 1983 damages action where judgment in favor of plaintiff would necessarily imply the invalidity of his continued confinement).

Furthermore, even if Plaintiff's claims relating to his state court conviction were not barred by *Heck*, any allegations directed at defendants Judge Satterfield and prosecuting attorney Oliver would still be subject to dismissal. As discussed above, Plaintiff's claims against defendants Satterfield and Oliver are subject to dismissal because Plaintiff does not allege, with any specificity, what either of these defendants did to violate his rights. Presumably, Plaintiff names these two defendants in connection to his alleged claims of wrongdoing in his state court case. However, such claims against these defendants are barred by immunity.

Judges are absolutely immune from suit for money damages unless they act outside of their judicial capacity or in the clear absence of jurisdiction. *Mireles v. Waco*, 502 U.S. 9, 11-12 (1991); *Liles v. Reagan*, 804 F.2d 493, 495 (8th Cir. 1986); *see also Pierson v. Ray*, 386 U.S. 547 (1967) (judges may not be held liable for damages under § 1983 for the performance of their respective duties in judicial proceedings). Here, Plaintiff makes no specific allegations against Judge Satterfield, but it appears that he is complaining about alleged wrongdoings by Satterfield while performing his judicial duties in Plaintiff's state court case. Plaintiff alleges no facts of Judge Satterfield acting outside his judicial capacity or without jurisdiction. Further, Judge Satterfield, acting as a judge in the 35th Judicial Circuit Court, took judicial action pursuant to that court's jurisdiction granted to it by the Missouri Constitution. *See* Mo. Const. art V, § 14. Judicial

immunity applies "even when the judge is accused of acting maliciously and corruptly." *Pierson v. Ray*, 386 U.S. 547, 554 (1967). Because Judge Satterfield acted within his judicial capacity and within his court's proper jurisdiction, he is granted absolute immunity from civil suit as to Plaintiff's claims against him.

Plaintiff also names Stoddard County prosecuting attorney Russell Oliver as a defendant. Absolute immunity also protects prosecutors against claims arising from their initiation of a prosecution and presenting a criminal case, even when vindictive prosecution is alleged. *Imbler v. Pachtman*, 424 U.S. 409, 427–31 (1976) (prosecutors are absolutely immune from § 1983 claims for damages when civil rights violations are alleged based on actions taken by prosecutor while initiating and pursuing a criminal prosecution); *Brodnicki v. City of Omaha*, 75 F.3d 1261, 1266 (8th Cir. 1996) ("Absolute immunity covers prosecutorial functions such as the initiation and pursuit of a criminal prosecution, the presentation of the state's case at trial, and other conduct that is intimately associated with the judicial process"); *Myers v. Morris*, 810 F.2d 1437, 1446 (8th Cir. 1987) (prosecutorial immunity extends even to allegations of vindictive prosecution) (*abrogated on other grounds*). Although Plaintiff alleges no specific claims against Oliver, presumably, Plaintiff claims that Oliver committed wrongdoing when performing his duties in Plaintiff's judicial proceedings. Oliver is protected by immunity and such claims are legally frivolous.

For all of these reasons, Plaintiff's claims brought in relation to his state court prosecution and against defendants involved in that prosecution (Judge Satterfield and prosecutor Oliver), fail to state a claim and are legally frivolous. These claims will be dismissed.

## III.   Claims related to Stoddard County Jail

Plaintiff's allegations concerning his conditions of confinement at Stoddard County Jail pertain to the time when he was held there as a pretrial detainee. The Fourteenth Amendment's

Due Process Clause is used to evaluate pretrial detainee's claims of deliberate indifference, whereas the Eighth Amendment is used to evaluate claims of convicted prisoners. *See Stearns v. Inmate Servs. Corp.*, 957 F.3d 902, 906 (8th Cir. 2020) (citing *Bell v. Wolfish*, 441 U.S. 520 (1979)). However, this distinction "makes little difference as a practical matter," because the same standard is applied. *Kahle v. Leonard*, 477 F.3d 544, 550 (8th Cir. 2007) ("Pretrial detainees are entitled to the same protection under the Fourteenth Amendment as imprisoned convicts receive under the Eighth Amendment."); *see also Vaughn v. Greene County*, 438 F.3d 845, 850 (8th Cir. 2006) ("Although this court has yet to establish a clear standard [for medical mistreatment] for pretrial detainees, we repeatedly have applied the same 'deliberate indifference' standard as is applied to Eighth Amendment claims made by convicted inmates."); *Hartsfield v. Colburn*, 371 F.3d 454, 457 (8th Cir. 2004) (applying the Eighth Amendment deliberate indifference analysis to a pretrial detainee's Fourteenth Amendment claim).

The Eighth Amendment prohibits cruel and unusual punishment, and limits conditions of confinement. *Robinson v. California*, 370 U.S. 660 (1962); *Rhodes v. Chapman*, 452 U.S. 337 (1981). The Supreme Court has explained this limit as a prohibition on punishments that "involve the unnecessary and wanton infliction of pain" including those that are "totally without penological justification." *Rhodes*, 452 U.S. at 346 (quoting *Gregg v. Georgia*, 428 U.S. 153, 173, 183 (1976)).

A.     **Cell Condition Claims**

The United States Supreme Court has determined that prisoners have a protected liberty interest in avoiding conditions of confinement that impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). To establish a conditions-of-confinement claim under the Eighth Amendment, a prisoner must demonstrate (1) that the alleged deprivation was "objectively, sufficiently serious"

to result in the "denial of the minimal civilized measure of life's necessities," and (2) that the defendant whose act or omission caused the alleged constitutional deprivation behaved with "deliberate indifference to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (internal quotations and citations omitted); *Revels v. Vincenz*, 382 F.3d 870, 875 (8th Cir. 2004). With respect to the "civilized measure of life's necessities," prison officials are required to ensure that inmates receive adequate clothing, food, shelter, and medical care. *Simmons v. Cook*, 154 F.3d 805, 807 (8th Cir. 1998) (citing *Farmer*, 511 U.S. at 832).

Here, Plaintiff alleges that he was held in a padded cell for a week with a toilet hole and four sandwiches a day. Subsequently, he was held for two months in a room with up to thirteen other inmates and where he slept on a mattress on the floor. These allegations regarding conditions of confinement are not enough to state a claim for cruel and unusual punishment. Plaintiff fails to allege how these conditions of confinement denied him "basic human needs" or "the minimal civilized measure of life's necessities," *Rhodes*, 452 U.S. at 347, and that any specific defendant inflicted these conditions deliberately or recklessly.

Allegations of discomfort or inconvenience do not rise to the level of a constitutional violation. *See Morris v. Zefferi*, 601 F.3d 805, 809-10 (8th Cir. 2010); *Williams v. Delo*, 49 F.3d 442, 446 (8th Cir. 1995). Plaintiff does not provide enough factual allegations concerning the "Chinese toilet" to support a finding of a violation of his minimal civilized measure of life's necessities. For example, Plaintiff does not allege that the cell was unsanitary or that he lacked a sink, toilet paper, or something for cleaning himself.[2] Nor does he assert any injury due to

---

[2] *See White v. Nix*, 7 F.3d 120, 121 (8th Cir. 1993) (finding no Eighth Amendment violation where prisoner confined to allegedly unsanitary cell for eleven (11) days).

exposure to human feces.[3]  Similarly, as to the sandwich restriction, Plaintiff does not allege that four sandwiches a day was an inadequate amount of food or that it resulted in weight loss or lack of nutritional value.[4]  Finally, Plaintiff does not describe the size of the day-room that he was held in or allege that sleeping on the floor caused him pain or suffering.  The inconvenience or uncomfortableness of sleeping on a mattress on the floor alone, without any claims of deliberate indifference, is not enough to state an Eighth Amendment claim.  *See Blackwell v. Selig*, 26 F. App'x 591, 593 (8th Cir. 2001) (allegations of sleeping on the floor on a four-inch-thick mattress for five nights did not amount to an unconstitutional condition of confinement claim).

Plaintiff's only claim of injury from his conditions of confinement is that the "overcrowding makes [his mental health problems] worse."  Doc. [1] at 6.  Plaintiff's overcrowding claim is conclusory and fails to set forth facts that state a claim as a matter of law. He claims that he was held in a "day-room" with up to thirteen inmates and six beds. *Id.*  However, putting multiple prisoners in a cell, like triple-celling, is only unconstitutional if it leads to a "deprivations of essential food, medical care, or sanitation."  *Cody v. Hillard*, 820 F.2d 912, 914 (8th Cir. 1987).  Plaintiff makes no allegations that the "overcrowding" deprived him of the minimal civilized measures of life's necessities or that sharing a "day-room" rises to the level of a violation of his constitutional rights.  Plaintiff's conclusory assertion that the housing situation

---

[3] The Court notes that courts have been cautious about condoning conditions of confinement that include an inmate's proximity to human waste.  *Fruit v. Norris*, 905 F.2d 1147, 1151 (8th Cir. 1990); *DeSpain v. Uphoff*, 264 F.3d 965, 974 (10th Cir. 2001) ("Exposure to human waste, like few other conditions of confinement, evokes both the health concerns emphasized in *Farmer* and the more general standards of dignity embodied in the Eighth Amendment."); *Brooks v. Warden*, 800 F.3d 1295, 1305 (11th Cir. 2015) (reversing dismissal of Eighth Amendment claim where prisoner was forced to defecate into his jumpsuit and sit in his own feces for two days and stating: "the health risks of prolonged exposure to human excrement are obvious.").  However, there are no such allegations of exposure here.

[4] *See Wishon v. Gammon*, 978 F.2d 446, 449 (8th Cir. 1992) (prisoners have right to nutritionally adequate food); *Martin v. Sargent*, 780 F.2d 1334, 1338 (8th Cir.1985) (inmate's allegations of inadequate diet stated Eighth Amendment claim); *cf. Berry v. Brady*, 192 F.3d 504, 508 (5th Cir.1999) (suggesting that to state Eighth Amendment claim inmate must allege "he lost weight or suffered other adverse physical effects or was denied a nutritionally and calorically adequate diet").

made his mental health problems worse, is not enough.  There is no indication that Plaintiff's mental health was not made worse by simply being incarcerated in general, never mind the number of inmates in the same room.  This failure to link the alleged worsening of mental health problems to the overcrowding or sleeping conditions in the day-room is fatal to his claim.

As stated above, Plaintiff fails to state how the conditions of confinement at Stoddard County Jail have created an atypical and significant hardship in violation of his constitutional rights.  Plaintiff's conclusory descriptions of his housing conditions is not enough to state a claim. *See Kaylor v. Fields*, 661 F.2d 1177, 1183 (8th Cir. 1981) ("a well-pleaded complaint must contain something more than mere conclusory statements that are unsupported by specific facts").

The only allegation against which Plaintiff names a specific defendant is his claim that jail administrator Cross revoked jail privileges and charged Plaintiff for a damaged mattress.  Doc. [1] at 9.  Plaintiff cannot bring a § 1983 claim based on his belief that Cross incorrectly found him liable for a damaged mattress.  Such allegations fail to rise to the level of deliberate indifference. *See also Gardner v. Howard*, 109 F.3d 427, 430 (8th Cir. 1997) (failure to follow prison policy is not basis for § 1983 liability).

### B.    Deliberately Indifferent Medical Care Claims

A jail official's intentional denial of, or delayed access to, medical care for a prisoner's serious injury constitutes unnecessary and wanton infliction of pain, giving rise to a claim of deliberate indifference to that prisoner's serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976).  To prevail on an Eighth Amendment claim of deliberate indifference, a plaintiff must prove that he suffered from an objectively serious medical need, and that prison officials actually knew of and deliberately disregarded that need. *Roberts v. Kopel*, 917 F.3d 1039, 1042 (8th Cir. 2019).  A "serious medical need" is "one that has been diagnosed by a physician as

requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Holden v. Hirner*, 663 F.3d 336, 342 (8th Cir. 2011) (quoted case omitted).

In this case, Plaintiff alleges that he has verified medical diagnoses of multiple serious mental health issues including "paranoid schizophrenia, social anxiety, schizo-affective disorder, chronic depression, [] generalized anxiety disorder, and bipolar disorder." Doc. [5] at 1. As such, Plaintiff has objectively serious medical needs. *See also Smith v. Jenkins*, 919 F.2d 90, 92-93 (8th Cir. 1990) (discussing that the principle of deliberate indifference extends to an inmate's mental health needs). However, Plaintiff fails to establish that any of the defendants actually knew of his medical needs and deliberately disregarded them. Plaintiff does not make specific allegations as to any of the named defendants regarding his need for treatment and medications. Plaintiff does not allege that he told jail administrator Cross or sheriff Hefner of his serious medical needs and that either of these defendants denied him care and treatment.

Furthermore, "deliberate indifference requires a highly culpable state of mind approaching actual intent." *Kulkay v. Roy*, 847 F.3d 637, 643 (8th Cir. 2017) (quoted case omitted). An inmate must demonstrate that a prison health care provider's actions were "so inappropriate as to evidence intentional maltreatment or a refusal to provide essential care." *Jackson v. Buckman*, 756 F.3d 1060, 1066 (8th Cir. 2014) (quoted case omitted). Here, Plaintiff admits to having seen a psychiatric nurse practitioner and having received medications for anxiety, bipolar disorder, and sleep problems. Doc. [1] at 6, 9. Plaintiff simply alleges that the medications were "[t]oo little, too late." *Id.* at 9. It is not enough for Plaintiff to disagree with the course of treatment received. *See Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997) ("[I]nmates have no constitutional

right to receive a particular or requested course of treatment, and prison doctors remain free to exercise their independent medical judgment.").

Moreover, when a delay in treatment is alleged to have violated an inmate's constitutional rights, a court measures the objective severity of the deprivation "by reference to the *effect* of the delay in treatment." *Jackson v. Riebold*, 815 F.3d 1114, 1119 (8th Cir. 2016) (internal quotation marks omitted) (quoting *Laughlin v. Schriro*, 430 F.3d 927, 929 (8th Cir. 2005)).  To support a claim based on a delay in treatment, a plaintiff must present "verifying medical evidence" showing that the delay in treatment had detrimental effects.  *Id.* at 1119-20*; see also Holden*, 663 F.3d at 342 ("[a] prisoner alleging a delay in treatment must present verifying medical evidence that . . . [the] delays adversely affected his prognosis.").  It is unclear at what point during his incarceration Plaintiff started receiving mental health medications.  Plaintiff alleges that he received them "too late" and that his mental problems had worsened.  But he does not provide any factual allegations in support of these claims.  Plaintiff does not describe a change or worsening of specific symptoms. He does not explain any change in his activities, mental state, or physical ailments that could demonstrate a change for the worse.  In sum, Plaintiff presents no evidence – verifying medical evidence or otherwise – of any resulting effect from a delay in receiving mental health medications.

Plaintiff fails to state a claim of deliberately indifferent medical care against any of the named defendants in this matter.  Plaintiff admits to having seen a medical professional and receiving medications for his serious medical needs.  His factual assertions are not enough to rise to the level of deliberate indifference.

### C.    Access to Courts Claims

Plaintiff also alleges that was denied access to the courts when he was held 56 days without a court appearance and when defendant Cross punished him for a jail violation by restricting,

among other things, his attorney visits.  Doc. [1] at 6, 9.  To state a claim premised upon denial of access to the courts, a plaintiff must demonstrate that he suffered an "actual injury."  *Lewis v. Casey*, 518 U.S. 343, 351-52 (1996).  The Eighth Circuit has recognized that, when bringing an access-to-courts claim, it is insufficient to merely allege a denial of access to a specific resource, even if the denial is systemic.  *Sabers v. Delano*, 100 F.3d 82, 84 (8th Cir. 1996) (citing *Lewis*, 518 U.S. at 353 n.4).  Instead, the plaintiff must plead (and ultimately prove) that the lack of the resource deprived him of some specific opportunity to defend himself, or advance a viable legal claim, in a criminal appeal, postconviction matter, or civil rights action.  *Id.*  Speculation that injuries might occur or could have occurred is insufficient.  *Hartsfield v. Nichols*, 511 F.3d 826, 832 (8th Cir. 2008) ("Absent an articulation of how the alleged wrongful conduct actually blocked [the prisoner's] access to filing a complaint, or caused a filed complaint to be deficient, [the prisoner's] alleged injuries are merely speculative.").

Here, Plaintiff does not explain, nor is it apparent, how he suffered actual injury by denial of his access to the courts.  He does not allege any deprivation of the opportunity to advance any specific claim in a pending action, or any deficiency in a case created by the denial of access to visits with his attorney.  State court records indicate that Plaintiff filed many *pro se* motions in his state case despite being represented by counsel.  Any injury to a court claim is only speculative at this point.  When no actual injury is alleged, dismissal for failure to state a claim is proper.  *See Hartsfield*, 511 F.3d at 832.

### Conclusion

Plaintiff fails to allege direct responsibility for a deprivation of rights by any named defendant, as required for personal liability under 42 U.S.C. § 1983.  To the extent Plaintiff seeks money damages and a ruling from this Court that his state court conviction is invalid, such a claim

is not cognizable under § 1983 and such a ruling is barred by *Heck v. Humphrey*, 512 U.S. 477 (1994). As to Plaintiff's claims regarding Stoddard County Jail, he fails to allege sufficient factual allegations to support a claim of deliberately indifferent conditions of confinement or medical care. Finally, because Plaintiff alleges no actual injury, his claims regarding a denial of access to the courts also fail. For all of these reasons, this case will be dismissed for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2)(B). Because Plaintiff's claims are all being dismissed, his motion for appointment of counsel will be denied as moot.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's motion for leave to proceed *in forma pauperis*, Doc. [2], is **GRANTED.** *See* 28 U.S.C. § 1915(a)(1).

**IT IS FURTHER ORDERED** that the Plaintiff shall pay an initial filing fee of $1.00 within **thirty (30) days** of the date of this Order. Plaintiff is instructed to make his remittance payable to "Clerk, United States District Court," and to include upon it: (1) his name; (2) his prison registration number; (3) the case number; and (4) that the remittance is for an original proceeding.

**IT IS FURTHER ORDERED** that the Clerk shall **not** issue process or cause process to issue upon the complaint as to defendants Joseph Z. Satterfield, Russell David Oliver, Carl Hefner, and Chris Cross because the complaint fails to state a claim upon which relief can be granted. Plaintiff's claims against defendants Joseph Z. Satterfield, Russell David Oliver, Carl Hefner, and Chris Cross are **DISMISSED without prejudice**. *See* 28 U.S.C. § 1915(e)(2)(B).

**IT IS FURTHER ORDERED** that Plaintiff's motion for appointment of counsel, Doc. [3], is **DENIED as moot**.

**IT IS HEREBY CERTIFIED** that an appeal from this dismissal would not be taken in good faith.

An Order of Dismissal will accompany this Memorandum and Order.

Dated this 25th day of April, 2022.

MATTHEW T. SCHELP
UNITED STATES DISTRICT JUDGE